# CASES

## ARGUED AND DETERMINED

### IN THE

## COURT FOR THE CORRECTION OF ERRORS.

### IN FEBRUARY, MARCH, AND APRIL, 1815.

———

JACKSON, ex. dem. BROCKHOLST LIV-  ⎫
INGSTON, AND OTHERS,              ⎬  *Plaintiff in Error.*
                                  ⎭

*against*

ANN DELANCY AND ABRAHAM  ⎫
RUSSELL,                 ⎬  *Defendants in Error.*
                         ⎭

THIS cause came before this court on a writ of error to the supreme court. [See *the case reported* 11 *Johns. Rep.* 365. 376.] *A.*, in 1770, being indebted to *B.* by three several bonds, in order to secure the payment of the same, executed to *B* a mortgage on all his lands, in the province of *New-York*, part of which lands were referred to by name. and part, comprising the premises in question, passing under a general clause, and covenanted, that on default, the mortgagee. his heirs, &c , might enter    *B.* died, having directed by her will all her estate in certain patents. and *elsewhere, wheresoever, and whatsoever*, to be turned into money by her executors, and to be equally divided among her five children, who were to be *tenants in common in fee of the realty*, until such sale and distribution.  In 1771, before the death of *B* , the mortgage had become forfeited, and a judgment had also been recovered by *B.* against *A.   A.*, by his will, executed in 1780, devised his estate to his wife, and in case of her death without disposing of the same by grant or devise, he devised it over to his daughter *D*. In 1788, the judgment against *A.* was revived by the executors of *B.*; and a *scire facias* was directed to the heirs of *A.*, who were summoned, but not to the wife of *A.*, the tenant for life, who was not summoned. and execution was issued thereon, and the lands of *A* sold, and purchased by *C.*, who had married one of the daughters and devisees of *B.*, and conveyed to him, who took possession of the premises, under that deed; which, however, it was now admitted, did not pass the premises.  *C.* procured conveyances from three of the other devisees of *A.*, and the tenants of the land in 1780 attorned to *C.* and surrendered their possession to him, and agreed to hold under him. The wife of *A.* having died, after devising her estate to trustees in trust for her daughter *D.*; it *was held*, in an action of ejectment on the demise of *D.* and her trustees, against persons claiming under *C.*, that *C.* had a right of entry under the will of *B.*, as devisee of the mortgage, which passed by the general words of the will. such appearing to be the intention of the testatrix, and that the defendants could set it up as an outstanding title to defeat the plaintiff's action.

A *scire facias,* to revive a judgment, irregularly issued, or an execution issued after a year and a day, without *scire facias,* is voidable only, and cannot be called in question in a collateral action, so as to defeat the title of a purchaser under the execution; and it seems, that, after the lapse of twenty years, it cannot be avoided on a direct application for that purpose.

In a sheriff's deed, nothing will pass under a general clause of, "*all other, the lands, &c. of the defendant.*"

In a sheriff's deed, the land sold must be described with reasonable certainty, and he can sell nothing under an execution which the creditor cannot enable him so to describe.

In a devise of all the *real and personal estate* of the testator, and if the devisee should die without disposing of it, then to *D.*, this subsequent limitation is void; because the first devisee took a fee by virtue of the word *estate*, and because the subsequent limitation was repugnant to the power given to the first devisee.

Where a person enters upon land without title, and the tenants surrender their possessions, and *attorn* to him, this is not a disseisin or ouster, and the attornment is void.  Such entry and attornment are not the commencement of an adverse possession.

*Trust* estates, under which is included the interest of a mortgagee, who, until foreclosure, is a trustee for the mortgagor, will pass under general words in the will relating to the realty, unless it can be collected from the expressions in the will, or the purposes and objects of the testator, that his intention was otherwise.

The 14th section of the *act concerning costs*, (1 *N. R. L.* 346.) giving *double costs* on the affirmance of a judgment on error, applies only where the writ of error is brought by the defendant in the court below. If the plaintiff below brings a writ of error, and the judgment is affirmed, he is entitled to single costs only.

IN ERROR.
........
ALBANY,
February, 1816,
~~~~~~~
JACKSON
v.
DE LANCY.

The action was for the recovery of certain lands in *Plattekill*, in the county of *Ulster*. The following facts were found by the special verdict. *William Alexander*, commonly called *Lord Stirling*, in his lifetime, was seised of a tract of land, supposed to contain 1,000 acres, situate in *Plattekill*, of which the premises in question are a part; and, being so seised, he executed to *Anne Waddell*, of the city of *New-York*, a mortgage, dated the 2d of *December*, 1770, reciting several debts due to her, &c., amounting to 5,043*l.* 16*s.*, for securing which he mortgaged certain lands in *Orange* county, *West-Chester* county, and in the counties of *Albany* and *Ulster*, " and all other the lands, tenements, and hereditaments, belonging to the said *William*, Earl of *Stirling*, within the province of *New-York.*" The tract of 1,000 acres, including the premises in question, was not one of the parcels particularly described, but passed under the general description above mentioned, of all the other lands, &c. *Ann Waddell*, in *January* term, 1771, obtained a judgment in the supreme court on two of the bonds recited in the mortgage, which was signed and docketed the 21st of *March*, 1771. *Ann Waddell* died some time in the year 1773, having made her will, dated the 29th of *March*, 1773, in which she directs her executors, among other things, to collect " all outstanding debts of every kind, and these, with all the rest of her estate in the *Hardenburgh* patent, and elsewhere, whatsoever, and wheresoever, to be turned into money, and equally distributed among her five children, share and share alike, who were to be tenants in common, in fee of the realty, until such sale and distribution be made." In *April*, 1775, the executors of *Ann Waddell* revived the judgment by *scire facias*, in the supreme court, against Lord *Stirling*. And, after the death of Lord *Stirling*, in the *October* vacation, in the year 1787, the executors of *Ann Waddell* sued out a *scire facias* on the judgment against the heirs and terretenants of Lord *Stirling*, on which *Robert Watts*, and *Mary* his wife, and *Catharine Duer*, the heirs of Lord *Stirling*, were summoned; and in *January* term, 1788, judgment passed against them on the *scire facias*, by default. This writ of *scire facias* was directed to the sheriff of the city and county of *New-York*, and commanded him " to give notice to the heirs of the said *William*, Earl of *Stirling*, and, also, to tenants of all the lands and tenements in his bailiwick, which were of the said *William*, Earl of *Stirling*, on the 26th of *June*, 1771 ;" and the sheriff

IN ERROR.
.......
ALBANY,
February, 1816.

JACKSON
v.
DE LANCY.

.returned that he had "made known unto *Robert Watts*, and *Mary* his wife, and *Catharine Duer*, which said *Mary* and *Catharine* are daughters and heiresses of the said *William*, Earl of *Stirling*, deceased, that they should be," &c.: and, further, " that there were no other heir or heirs of the said *William*, Earl of *Stirling* ; nor were there any other tenants, or tenant, of any lands or tenement which were of the said *William*, Earl of *Stirling*, on the day the said judgment was rendered, or ever after, in his bailiwick," &c.

A *testatum fieri facias* was issued on the judgment so revived, directed to the sheriff of the county of *Ulster*, returnable in *July* term, 1788. On the 10th of *June*, 1788, the sheriff of *Ulster* executed a deed of conveyance to *John Taylor*, of the city of *New-York*, merchant, which recited that he, the sheriff, &c., had seized of the lands and tenements which were of the said *William*, Earl of *Stirling*, &c., in the hands of *Robert Watts*, and *Mary* his wife, and *Catharine Duer*, as heirs, &c., within his bailiwick, the several tracts, pieces, or parcels of lands, &c. therein after mentioned and described, and the same lands and tenements, &c., he did separately expose to sale, and did sell and dispose of the same, to wit, the *first* of the said tracts, &c., for 50*l.*, and the second of the said tracts, &c., for the sum of 50*l.*, to *John Taylor*, being the highest bidder, &c.; these two tracts were particularly described in the deed, which, among the property so conveyed, further stated, " and, also, other the lands, tenements, and hereditaments, whereof the said *William*, Earl of *Stirling*, was seised, on the said 26th of *June*, 1771, or at any time afterwards, within the said county of *Ulster*, whether held in severalty, or in common with others ;" and under this general description was included the tract of 1,000 acres, containing the premises in question, and which were not otherwise or particularly mentioned and described. Lord *Stirling* died in the spring of 1793, leaving two daughters, *Catharine*, the wife of *William Duer*, and *Mary*, the wife of *Robert Watts*, his heirs at law, having, on the 29th of *January*, 1780, made his will, by which he devised " all his real and personal estate, whatsoever, to his wife *Sarah*, to hold the same to her, her executors, administrators, and assigns ; but, in case of her death, without giving, devising, and bequeathing, by will or otherwise, or assigning the said estate, or any part thereof, then he devised all such estate, or such parts thereof as should

IN ERROR.
........
ALBANY,
February, 1816.

JACKSON
v.
DE LANCY.

remain unsold, undevised, &c., unto his daughter *Catharine*, to hold the same to her, her executors, &c.; and appointed his wife, and his daughter *Catharine*, and her husband, *William Duer*, executors of his said will. *Sarah*, the wife of Lord *Stirling*, died in *March*, 1805, having, on the 27th of *November*, 1804, made her will, by which, after several pecuniary legacies, she devised " all the residue of her estate whatsoever, real and personal, in possession, or action, to *Brockholst Livingston*, and *Matthew Clarkson*, and the survivor, *in trust*, for the separate use of her daughter *Catharine*, then the wife of *William Neilson*, during her life, and after her decease, to be divided among her children; and appointed the persons so named as trustees, her executors. At the time of the death of Lord *Stirling*, the tract of 1,000 acres, of which the premises in question were part, were possessed by *Nathan Miller*, and persons holding under him, and were so held and possessed until the entry of *John Taylor*, and the attornment to him by *Miller* and the persons holding under him. *Miller* held the possession, as tenant to Lord *Stirling* and his representatives. *Ann Waddell* left five children, to wit, *William*, who resided in *England*, her eldest son and heir at law, *Henry*, *Mary*, the wife of the said *John Taylor*, *Ann*, the wife of *Eleazer Miller*, and *Sarah*, the wife of *Joseph Taylor*. On the 2d of *February*, 1788, *Henry Waddell* executed a conveyance, reciting the mortgage and judgment aforesaid, of all his right, title, and interest in the same, to *John Taylor*; and a similar conveyance was executed the 19th of *December*, 1809, by *Eleazer Miller*, and *Ann* his wife, of all their right, &c., to the said *John Taylor*, and on the 25th of *December*, 1809, *Joseph Taylor*, and *Sarah* his wife, executed a similar conveyance to *John Taylor*.

On the 12th of *February*, 1809, *Samuel Brewster*, as attorney of *John Taylor*, authorized *Ichabod Williams* to take possession of the tract of 1,000 acres, in *Ulster*, and to bring actions, in the name of *Taylor*, against any person in possession. On the 17th of *June*, 1791, *William Clark*, *Abraham Russell*, and others, tenants in possession of the land, by a writing, under their hands and seals, attorned to *John Taylor*, since which time the said tract has been held under *John Taylor* and his heirs. On the 1st of *March*, 1805, *Nathan Miller* executed a lease of the premises in question to *Andrew Gee*, for 21 years, who after-

wards delivered the possession to the defendant, *Abraham Russell.*

. The court below gave judgment for the defendants. The cause now coming on to be heard, the *Chief Justice* assigned the reasons for the judgment, which were the same as those stated in the report of the case. (Vol. XI. p. 373.)

*J. Duer,* for the plaintiff in error, contended, 1. That *John Taylor* had no right of entry at the time of the attornment of *Russel,* the defendant, to him; and that the attornment was, therefore, void, and did not affect the possession of the devisees of Lord *Stirling.**

2. That the proceedings by *sci. fa.* to revive the judgment against the heirs, &c., of Lord *Stirling,* were void, as the widow of Lord *Stirling,* and the tenant of the freehold, was not made a party, or summoned.†

. 3. Admitting even that the execution was regular; the premises did not pass by the sheriff's deed. The description was too general. The property sold and described must be identified by a particular description, or by metes and bounds.‡

. 4. *John Taylor* was not a mortgagee within the meaning of the statute. He had no right of entry as a mortgagee; for the legal estate in the premises was not passed by the will of Mrs. *Waddell,* but had descended to *William Waddell,* her heir at law. *John Taylor* could not recover the debt at law, nor foreclose the equity of redemption.§

. 5. The possession of *John Taylor* was hostile to the heir at law, and to the rights of the executors of Mrs. *Waddell,* and calculated to defeat the execution of the trust created by the will. In equity, a mortgage is considered as mere personal property, or as a debt which passes to the executors. It will not pass under a devise of the real estate, if there are any other lands to feed the devise.‖ Cases as to trust estates, passing under the general words of a devise, are not applicable to the present. The case of *Baybrooke* v. *Inskep,*** where that doctrine is held, is contrary to former decisions, and is, at best, a doubtful authority. A mortgagee, after a forfeiture, is not a trustee at law, but the legal owner. It is clear, that *John Taylor* had no right of entry as mortgagee; and unless he had such right of entry, the attornment to him was void. If so, the right of the lessors to recover, against *J. Taylor,* is as perfect as

*IN ERROR.*

ALBANY,
February, 1816.

JACKSON
v.
DE LANCY.

* 1 *N. R. L.*
543. *sess.* 36. *ch.*
63. *s* 27, 28.

† *Carth.* 167.
*Com. Dig.* tit,
*Sci. Fa.* (C. 5.)
*And.* 161.

‡ 1 *Johns. Cas.*
284.

§ 2 *Fonbl. Eq.*
255. 2 *Equ. Cas.*
*Ab.* 192. 2 *Vern.*
66. *Prec. in Ch.*
15. *Cruise's Dig.*
tit. *Mortg.* ch. 1.
s. 17.

‖ 2 *Vern.* 183.
625. 2 *Fonbl.*
*Eq.* 284. 1 *Ch.*
*Cas.* 283. 2 *Ch.*
*Cas.* 51. 1 *Bro.*
*P. C.* 228. *Pow.*
*on Mortg.* 683. 2
*Fonbl.* 279. *note.*
1 *Atk.* 605. *Crut.*
*Dig.* tit. *Devise,*
*ch.* 10. *s.* 113.
** 3 *Vesey,* 417.

IN ERROR.
••••••
ALBANY,
February, 1816.

JACKSON
v
DE LANCY.

against the tenant himself. He cannot set up the mortgage, as an outstanding title, for he has not the legal possession.

6. *John Taylor* had not even an equitable interest. The interest in the mortgage-debt was wholly vested in the executors of Mrs. *Waddell,* who alone could sue for, and recover the debts :* when the legal estate passed to the heir, the equitable interest passes to the executors. One or more of the children of the testator cannot seize and distribute the estate, without the assent of the executor and the other children. *John Taylor* cannot shield himself under the will, when his object is to defeat the will, by taking away the equitable interest of the testators, and stripping the heir at law, *William Waddell,* of his rights. The assent of the executors or heir is not found by the special verdict, and it cannot be presumed or inferred.†

It will probably be contended, on the other side, that the attornment to *Taylor,* if void, was, notwithstanding, such a commencement of an adverse possession, as to bar this action. But if the attornment were fraudulent and void, as certainly it was, he having no right of entry under the will of Mrs. *Wardell,* and no assent to be presumed in his favour, it must be void to every intent. A possession, under such circumstances, cannot be rendered good by any length of time ; for the statute declares the attornment to be void, and *of no effect.*‡

But admitting the possession of *John Taylor* to have been adverse, such adverse possession is not a bar to the recovery of the plaintiff in this suit ; *Catharine Neilson,* one of the lessors, being entitled to the premises as executory devisee, under the will of Lord *Stirling,* and twenty years not having elapsed since her right of entry accrued. It may be urged that the executory devise to *Catharine Duer* was void as being repugnant to the absolute ownership previously given by the will to Mrs. *Alexander,* according to the decision of the Supreme Court, in *Jackson,* ex dem. *Brewster,* v. *Bull ;*§ but in that case the first devisee took an estate in fee, and the limitation over was on an indefinite failure of issue here ; a power was given by the will to Mrs. *Alexander* in relation to the property, but on her dying, without executing that power, the executory devise was to vest in possession. Mrs. *Neilson* cannot be said to derive her title under the will of Mrs. *Alexander,* for the provisions of it did not vary from that of Lord *Stirling,* but were evidently only intended to effectuate it in the most beneficial manner. The case

* 1 Ch. Cas. 51.
2 Ch. Cas. 29.
50. Powell on
Mortg. 614. 1047.

† 1 Caines' Rep.
63. 1 Burr. 126.

‡ Sess. 36. c. 63.
s. 28. 1 R. L. 443.

§ 1b Johns. Rep.
15.

of *Doe*, ex dem. *Willis*, v. *Martin*,* supports the doctrine contended for. In that case it was held, that in a deed to trustees, for the use of the grantors for life, a remainder to such children, and for such estates as the grantors should appoint. did not prevent a subsequent limitation to the children, in general,. of the grantors, in fee, from being a vested remainder. "A general power of appointing any estate or interest, *ad libitum*," says *Fearne*,† "though enabling him to limit the fee, does not ascertain any estate to be limited; therefore, no limitation of the fee arises. until it be actually appointed under the power. The appointment, when executed, may not reach the fee; it may stop at an estate for life, for years, or in tail; and until the appointment be complete, the power amounts no more to a limitation of the fee than it does of an estate tail, or any other ascertainable interest, equally within the extent of the power, but in which the execution of it may terminate, without limiting the whole fee." This reasoning applies as well to one kind of indefeasible future interest as to another; to an executory devise, as well as to a vested remainder. The appointment, in the present case, did not reach the fee, for no appointment at all was made. Thus the executory limitation to Mrs. *Neilson* was valid; her estate did not vest in possession until the death of Mrs. *Alexander*, and not until then did the statute of limitations begin to run against her.‡ Besides, the lease for 21 years, under which *Russell* held, did not expire until 1806 : until the lease had expired, the person entitled in remainder could not enter, and, where a forfeiture has been committed, he is not obliged to enter until the end of the term.§

*Oakley* and *Van Buren*, contra. Without pretending to assert the validity of the conveyance of the 10th of *June*, 1788, from the sheriff of *Ulster*, they contended that the defendants had shown a sufficient title and estate, under the mortgage to *Ann Waddell*, to bar the action of the plaintiff; this mortgage being a subsisting outstanding title, which they might have set up as a bar, even if they could not have connected themselves in interest with it; still more, when, as in this case, they do connect themselves with it, and claim under it part of the land which it covers. It is true that it did not specify the premises in question, but the general clause, " all other the lands, &c., within the province of *New-York*," was amply sufficient to pass to

*IN ERROR.*
........
ALBANY,
February. 1816.

JACKSON
v.
DE LANCY.
* 4 *Term. Rep.*
39 *Fearne's C.
R. & Ex Dw.
(Butler's Ed)*
228.
† P. 230. Bui:
ter's Ed.

† 4 *Johns. Rep.*
390. *Burr. Rep.*
120.

§ 7 *East's Rep.*
320.

IN ERROR.
.......
ALBANY,
February, 1816.

JACKSON
v.
DE LANCY.

\* Plowd. 289.
A Mod. 157 2
Rol. Abr. 49. 57.
P. pl. 45.

...

‡ 3 Johns. Cas.
322.

† Pow. Mortg.
438.

‡ 2 P. Wms. 198.
201. Co. Litt. b.
3. note, 96. Cru
Dig tit. 38. c.10.
s. 113  116, 117,
118.  2 Ch. Cas.
51.  3 Ves. 348.
714.

|| Pow. Mortg.
444.  692, 693.
6 Cru  Dig. 231.
1 Atk. 605. n. 8
Term Rep. 122.
5 Ves. 840.  8
Ves. 41.  1 Vern.
4.

\*\* Pow. Mortg.
688, 689

†† Burr. Rep.
1898.  Comp. 46.
Doug. 721  777.
1 Term Rep. 737.
758.

‡‡ Toll. L. of
Ex. 360.

the mortgagee all the lands not described in the deed, which, at the time of its execution, *belonged* to the mortgagor.* *Mrs. Waddell*, the mortgagee, being thus possessed of the legal and equitable estate in the mortgaged premises, on the mortgage becoming forfeited by non-payment, transmitted her equitable interest to her children, by her will. She directed her *outstanding debts* to be collected and distributed among her five children, and by this assignment of the debt, the mortgage followed as an incident, and vested in the devisees, in the same manner, and in the like proportions, as the debt which it was intended to secure.†

But the legal estate under the mortgage, (which is a devisable interest,†) passed by the general words in the will, whereby the testatrix devises *all the rest of her estate whatsoever, and wheresoever,* to her children. That this was the intent of the testatrix, was apparent from her declaration in the preamble of the will, *that she disposed of the whole of her estate, real and personal,* no part of which could she have meant should go to the heir at law, with whom she was at variance; and the expressions which she has used are competent to effectuate that purpose; the *debt* was given to her children, and, certainly, the testatrix must have intended that the *security* should follow it. General words in a will, unless peculiarly or technically applicable to real estate, are sufficient to pass mortgage lands,§ unless it be apparent, from the will itself, that the intention of the testator was otherwise; and the authorities show, that any estate may pass under general words in a will.|| If, however, the mortgage lands did not pass by the will, they descended to the heir at law, as trustee for the persons entitled to the debt,** who, as *cestuy que trusts,* had a beneficial interest in the land, and cannot be turned out of possession by the title of their trustee;†† and it is now admitted, on the other side, to be a valid subsisting mortgage.

The estate, then, both equitable and legal, in the premises, having passed, by the will, to the children of the testatrix, *Henry Waddell,* one of the executors, in conformity to the authority given them by the will, conveyed these premises to *John Taylor,* who was then in possession, under the deed from the sheriff of *Ulster. Taylor* thus became, at least, beneficially interested, (the act of one executor, in relation to personal property, being binding upon all,‡‡ and the assent of the other to be presumed, it being in unison with his duty,) and might have used the name

IN ERROR.
......
ALBANY,
February, 1816.

JACKSON
v.
DE LANCY.

of the heir at law to bring an action of ejectment, or, by an application to chancery, have compelled a conveyance to himself; and he would be the person accountable for the rents and profits in chancery. The deed from *Henry Waddell*, being a general conveyance of all his interest, conveyed his right, as executor, although he did not execute it in that capacity.* But, at all events, *Taylor*, exclusive of the right of his wife, held the rights of three of the children of the mortgagee, and so possessed a legal estate under which the defendants can protect themselves in this action; for the legal estate must prevail at law,† and may be set up by the tenant as a bar to an action by the *cestuy que trust*, or person having the equitable title. This doctrine is not shaken by the cases of *Hitchcock* v. *Harrington*,‡ and *Collins* v. *Torry*,|| for, in neither of those cases was the mortgage, produced by the defendant, a subsisting incumbrance, and the court has never said that even a stranger might not avail himself of an unsatisfied mortgage. The entry of *Taylor* was not an ouster of the heir at law, and, after this lapse of time, a conveyance from the heir to the party in possession ought to be presumed.**

*Ld. Raym. 1306.*

† *Doug. 722. 777.*
| *Term Rep. 735.*
2 *Term Rep 684.*
7 *Term Rep 46,*
47. 8 *Term Rep.*
122. 5 *East's*
*Rep.* 138. 2
*Johns. Rep. 84.*
226. 3 *Johns.*
*Rep.423. 8Johns.*
*Rep.* 488.

† 6 *Johns. Rep.* 290.

|| 7 *Johns. Rep.* 278.

** 1 *Caines' Rep.* 90.

It is not competent for the plaintiffs, who, in this respect, are strangers, to raise the question, to whom the legal estate passed, whether to the heir, the executor, or the devisees. It is perfectly immaterial to them, who is entitled to the possession. Whoever may be in possession will be held, by the court of chancery, a trustee for the mortgagor, and so accountable for the rents and profits : that court, on a bill to redeem, would not require the executor, or heir at law, to account. If, then, the court of chancery, as certainly it would, would make the person in possession account for the rents and profits, where was the propriety of instituting this suit? The fact of attornment can make no difference ; it is immaterial to the plaintiff, whether it was made to *Taylor*, or to the heir at law ; in neither case can his interest be affected; the party in possesion was still a trustee, and the plaintiff's lessors ought to have vindicated their rights by a bill to redeem.

But if the plaintiff is authorized to raise the question of attornment, we deny that it was void, and contend that it came within the proviso of the act which saves an attornment " made with the privity and consent of the landlord or lessor, or to any

IN ERROR.
......
ALBANY,
February 1816.

JACKSON
v
DE LANCEY

# Sess. 36 c. 63.
s. 2 & 1 R. L
443.
† Co. Litt. 310.
a.

mortgagee after the mortgage is become forfeited."* Taylor had a right, at least, in part of the land, and as tenant in common he held for all the devisees. He had an equitable interest in the mortgage debt, which alone was sufficient to enable him to accept an attornment. An attornment to a cestuy que use, is valid.† And, further, as Russel took the land from Miller, as his tenant, and Miller transferred the possession to Taylor, Taylor had a legal possession. After the lapse of twenty-three years, the assent of the landlord to the tenant, to make attornment, and of the heir at law to Taylor, to receive it, is to be presumed.

Though it is not necessary to agitate the question of adverse possession, it may be confidently asserted that the right of entry of the plaintiff's lessors is barred by the statute of limitations. Taylor entered under a claim of title—a claim of title consisting of two branches; one good, that is the mortgage; the other bad, the deed from the sheriff of Ulster: but, however bad the latter may be, it is sufficient for the present purpose; it determines the nature and character of his possession, and shows it to have been hostile to the rights of the lessors of the plaintiff. The attornment to Taylor was available for the same object; that attornment, if fraudulent and void, as an attornment, yet decisively marks the intent of Taylor to hold the land in opposition to the former proprietor.

Nor are the excuses, which have been offered on the other side, for their neglect in entering, sufficient. Taylor entered in 1789, under claim of title, during the life of Mrs. Alexander, and the statute began to run from that time, without regard to the disability of Mrs. Neilson; she must be concluded by the neglect of the particular tenant. The cases in which the reversioner, or remainderman, cannot be affected by the laches of the tenant for life, are where the tenant for life has no power to alienate or incumber. Here Mrs. Alexander had authority to sell, or devise, the land in fee. Such sale, or devise, would have been binding on the remainderman. If the remainderman, or reversioner, be not bound by the acts, he is not concluded by the laches, of tenant for life; but where the acts of the particular tenant are obligatory on him, he must, also, be barred by his laches. Further, Mrs. Neilson has no other title than a cestuy que trust, under the will of Mrs. Alexander, and her estate being a continuation of that of her testatrix, can

be in no better plight than it was when in the hands of the person from whom she received it; she takes nothing under the will of Lord *Stirling*, for the limitation to her is void, as being repugnant to the antecedent devise.* The possession of *Nathan Miller*, which was merely found by the jury to have existed at the time of the death of Lord *Stirling*, is altogether inoperative;† he was a mere tenant at will; a lease by the mortgagor, after a forfeiture of the mortgage, is a nullity,‡ and the lease from *Miller* to *Russel* could not suspend the right of entry.

*IN ERROR.*
......
**ALBANY,**
February 1816.

JACKSON
v.
Dr LANCY.

* 10 *Johns Rep.*
19.
† *Gilb. Tenures,*
90.
‡ *Doug.* 21.
*Pow. Morlg* 226,
227 *Cru Dig.*
tit. 15. c. 2. s. 5.

*Henry*, in reply, said, that the points arising in this case were merely questions of law, and if *John Taylor* had no right of entry, either under the sheriff's deed, or the will of *Ann Waddell*, the plaintiff had pursued the proper course in bringing an action of ejectment,

The defendants have, in fact, set up a title under the sheriff's deed; else why did they produce, at the trial, the documents in relation to the sale under the execution? This court, therefore, must pass upon that title, which was void, as well because there was no sufficient revival of the judgment, as because the premises in question were not described in the deed; they were not known as being intended to pass by the sale, and, consequently, could not have entered into the contemplation of purchasers in calculating the price. *Taylor*, then, having no right of entry under the sheriff's deed, if he can show no other title, the attorment to him must be void. An attornment to any other than the legal owner is void.

Having disposed of this question, he proceeded to inquire if *Taylor's* entry was protected by the will. This, he said, was the turning point of the case; and if *Taylor* had a right of entry at law under the will, the plaintiff must fail. To understand this part of the subject, it became necessary to consider the nature of the respective interests of mortgagor and mortgagee.

The mortgagor, even after forfeiture, until foreclosure, or entry by the mortgagee, is, to all intents, the owner, and in the seisin of the land,§ and may take the rents and profits without accounting to the mortgagee; his widow is entitled to dower out of it;‖ he may grant it, devise it, vote upon it; and an outstanding mortgage not foreclosed, is not a breach of the covenant of seisin in a deed ** But the interest of the mortgagee is merely a personal chattel,†† which cannot, before foreclosure, be sold

§ 2 *Johns. Rep.*
75.

‖ 7 *Johns. Rep.*
278.
** 7 *Johns. Rep.*
376. 380.
†† *Pow. Morlg.*
683. *Prec Ch.*
11. 1 *P. Wms.*
295.

IN ERROR.
.•....
ALBANY,
February, 1816.

JACKSON
v.
DE LANCY.
*4 4 Johns. Rep.
41.

† Pow. Mortg.
689, 690.   2
Vern. 193.

§ 1 Vern. 4. n.

§ Ld.Raym. 1306.

by his creditor under an execution;* he cannot incumber the equity of redemption by a lease for the shortest term, even after forfeiture; if he takes possession of the land, he becomes a trustee to the mortgagor, and must account to him for the rents and profits; and, after his death, his estate goes not to his heir, but to his personal representatives.†

From a review of the cases in which the question has been discussed, how far general words in the will of a mortgagee may include a mortgage, the following rule may be laid down as the result : " that no general words applicable to the realty, will pass a mortgage interest, (which has been shown to be merely a chattel,) where the equity of redemption has not been foreclosed or released, or the mortgagor has not procured the possession."‡ There are no expressions in this will that can take the case out of the rule which is here stated. The testatrix directs her executors to sell all her estate, and distribute the proceeds among her five children, who are to be *tenants in common in fee, of the realty*, until such sale and distribution. These are the only words, if any, that can have that effect, and surely they do not reach the mortgage. The words *whatsoever, and wheresoever*, only apply to the power of the executors to sell, and had the subsequent clause been omitted, all the lands of the testatrix would, in the mean time, have gone to the heir at law. The power to the executors to sell could not apply to the mortgage lands, until after foreclosure, their authority only extended to such lands as the testatrix might have sold and conveyed in fee. The case of *Hutchinson* v. *Savage*,§ which has been cited on the other side to support the deed from *Henry Waddell* to *Taylor*, as a grant of his interest as executor, has no application; indeed, it makes against them; for it shows that a general grant will not pass an interest which the grantor possesses in a representative capacity, unless he have no interest of his own upon which it can operate. Since, then, the legal right to the premises did not pass to the devisees under the will, it must have vested either in the heir at law, or the executors, and the defendants are now seeking to connect themselves with the legal estate, in order, unjustly, to oust the heir of his rights : an object which no court will sanction.

When the attornment was first made to *Taylor*, his interest, if any, extended but to two-fifths of the land, so that there is no room for presuming the assent either of the executors or the

'heir. But their assent is not found, and therefore cannot be presumed on a special verdict.*

Since, then, *Taylor* had no right of entry under the will of *Mrs. Waddell,* he cannot connect himself with the mortgage; he is a mere stranger, and a stranger cannot set up on outstanding mortgage in an action of ejectment by the mortgagor.† No person can avail himself of a mortgage but the mortgagee, and those who stand in his place. The defendant, *Russell,* entered as lessee under a title derived from Lord *Stirling,* and he can-not be allowed to contest the right which he has once recognised.‡

The possession acquired by *Taylor,* being under a fraudulent attornment, is not adverse to the plaintiff's lessors; but admitting that it were, still, as Mrs. *Alexander* did not die until 1805, and Mrs. *Neilson* was then a feme covert, the statute has not yet begun to operate upon her rights.

IN ERROR.
......
ALBANY,
February, 1816.
⌒⌒⌒
JACKSON
v.
DE LANCY.
* Bac. Abr. Ver-
dict, (R.)
† 6 Johns. Rep.
294. 7 Johns.
Rep. 282.

‡ 1 Caines' Rep.
444. 2 Caines'
Rep. 215. 3
Johns. Rep. 223.
499. 6 Johns.
Rep. 35.

THE CHANCELLOR. The premises in question were original-ly owned by Lord *Stirling,* and the lessors of the plaintiff claim title under him. The defendants set up title under a mortgage which Lord *Stirling* executed to *Anne Waddell,* in 1771. A part of the debt secured by the mortgage, was prosecuted at law, to judgment and execution, and *John Taylor,* under whom the defendants held, took, as purchaser, a sheriff's deed of the premises under the execution; and he was, also, at the same time entitled, under the will of *Anne Waddell,* to two fifths of her estate.

If *Taylor* acquired a title under the sheriff's deed, or was entitled to the land under the will, the lessors of the plaintiff cannot recover. There is nothing in the case to warrant an inference that the mortgage has been satisfied or discharged; and in respect to the questions arising under the special verdict, it is to be considered as a subsisting incumbrance.

I am induced to think that the title set up by the defendants under the sheriff's deed, cannot avail them. Two objections are made to that title. 1. That the *scire facias* reviving the judgment was not duly directed and served; and, 2. That the premises were not duly sold by the sheriff. Of these objections, one appears to be solid, and the other not.

1. The *scire facias* was directed to the heirs of Lord *Stirling,* and served on them; but that service was of no use, for they

IN ERROR.
......
ALBANY,
February, 1816.
⁓⁓⁓
JACKSON
v.
DE LANCY.

took nothing by descent. Lady *Stirling* was the devisee of the real estate; and she was, consequently, the tenant of the freehold, and ought to have been the party to the writ. It was the same thing, as to her rights, as if execution had issued, and the lands been sold on the dormant judgment against Lord *Stirling*, without any revival by *scire facias*. Still, I take the law to be that even the omission altogether of the *scire facias* will not, as of course, render void a sale under the execution. An execution issued on a judgment after a year and a day, without revival, has been held to be voidable only, and a justification to the party under it, until set aside. (3 *Caines' Rep.* 270. 8 *Johns. Rep.* 365.) The *scire facias* is intended as notice to a party to show cause why execution should not issue, and to give him an opportunity to plead payment, or other discharge; and if it be omitted in a case requiring it, he would, no doubt, be entitled to relief, on proper application. But, in this case, the execution has been permitted to stand to this day without being regularly questioned by Lady *Stirling,* or her representatives. She lived seventeen years after the execution had been thus irregularly issued; and it cannot but be presumed, that the service of the *scire facias* on her daughters came seasonably to her knowledge; and even ten years have elapsed since her death, and no attempt appears to have been made by her heirs or devisees to set it aside. I presume that the supreme court would not now sustain a motion to set aside the execution for irregularity, after so great a lapse of time. That court has once said, (*Thompson* v. *Skinner*, 7 *Johns. Rep.* 556.) that after the lapse of 20 years, no judicial proceeding whatever ought to be set aside for irregularity; and it has been denied in other courts, (2 *Bay*, 338.) even after 12 years. The objection is infinitely stronger when the attempt is made to question the regularity of the execution, and to set aside the title under it, in this collateral action. The regularity of the revival of the judgment by the *sci. fa.* was not the point in issue in this cause. It was held in the supreme court of *Pennsylvania*, in *Heister* v. *Fortner*, (2 *Binney*, 40.,) that a judgment revived by *sci. fa.* after a year and a day, upon one *nihil* only, which is the same as no summons, may be set aside for irregularity, or reversed on error, but that the irregularity cannot be noticed, collaterally, in another suit; and that, even if the judgment should, for that cause, be reversed, or set aside, a purchaser at a sheriff's sale would hold the land. A

IN ERROR.
......
ALBANY,
February, 1816.

JACKSON
v
DE LANCY.

similar doctrine was laid down by Lord *Redesdale*, in *Bennet v. Hamill* 2 *Scole & Lefroy*, 566.,) where it was held, that a purchaser under a decree should not be affected by error in the decree. in its not having given a day to an infant defendant to show cause.

This doctrine appears to me to be very reasonable, and conducive to the public good. It is intended to impose upon parties the necessity of looking into mistakes in proceedings before they become stale and forgotten; and it tends to quiet purchasers, by giving security to judicial titles. The first objection, therefore, to *Taylor's* title under the execution, from the want of a regular revival of the judgment by *scire facias*, falls to the ground.

2. The next objection is, that the premises did not pass by the sheriff's deed; and here, I think, the objection is well taken.

The sheriff's deed contains all the evidence we have of the sale; and it recites, that by virtue of the execution, the sheriff seized the tracts and parcels of land therein mentioned and described, and that he exposed the same separately to sale, and sold each of them to *John Taylor* for 50*l*., making in the whole 100*l*. It then states, that by virtue of the execution, and in consideration of the said 100*l*., he conveyed the said two tracts of land, by metes and bounds, to *John Taylor.* The deed then adds, by a general clause, these words : " and also all other the lands, tenements, and hereditaments, whereof the said *William*, earl of *Stirling*, was seised within the county of *Ulster*." It was under this general clause that the premises were intended to be conveyed, whereas it would appear from the deed that the levy, and the exposure to sale, and the price bid, applied only to the pieces or parcels of land which were therein mentioned and described. It appears to me to be altogether inadmissible, that the property of a defendant should be swept away on execution, in this loose undefined manner. It would operate as a great oppression on the debtor, and lead to the most odious and fraudulent speculations. No person attending a sheriff's sale can know what price to bid, or how to regulate his judgment, if there be no specific or certain designation of the property. In this case, the price was given for the land described, and not for lands which, we are to presume, were then wholly and equally unknown to the sheriff and the purchaser. It was the same thing to the purchaser, as if no such land ex-

isted. To tolerate such judicial sales, would be a mockery of justice. It ought to be received as a sound and settled principle, that the sheriff cannot sell any land on execution but such as the creditor can enable him to describe with reasonable certainty; so that the people whom the law invites to such auctions, may be able to know where, and what, is the property they are about to purchase. Perhaps the case may be different, if the description in the mortgage be general, and the mortgagee sells under a power, and the mortgagor will not come forward at the sale, and point out and identify the lands. The sale, in such a case, depends upon the contract of the parties; but sales by process of law are under the protection of rules established for the common safety; and I see no possible ground to hesitate concerning the policy, or the justice of the rule in this case. The title, therefore, set up by the defendants, under the sheriff's deed, totally fails.

3. There was another ground of defence mentioned and discussed upon the argument; and that was the existence of an adverse possession of 20 years, sufficient to toll the plaintiff's entry. From the time that *Miller* and the other tenants surrendered their possessions to *Taylor*, to the time of bringing the suit, above 20 years had elapsed, and if the statute of limitations had begun to run from the time of that surrender, the lessors of the plaintiff would undoubtedly have been barred. But it did not begin to run, for reasons which I shall presently mention. It has been urged that there was a suspension of the statute by reason of coverture, rights in remainder, &c. This, however, is a mistake. There was no disability on the part of Lady *Stirling*, and she owned the whole estate, in fee, under her husband's will, at the time of *Taylor's* entry. The devise to her was of " all the real and personal estate, whatsoever, &c.;" the word *estate*, here carried a fee, and the further provision in the will, that if she died " without giving, devising, selling, or assigning it, &c." the estate should go to his daughter *Catherine Duer*, was not a good limitation by way of executory devise, as such a limitation was repugnant to the power to sell, and, consequently, void. This was the decision of the supreme court in *Jackson* v. *Bull*, (10 *Johns. Rep.* 19.,) and nothing has been urged to show why that decision is not to be regarded as correct. Lady *Stirling* was then the owner of the equity of redemption, and *Miller* was her tenant, at the time of the surrender of the possession to *Taylor*.

But the reason why the statute of limitations did not then begin to run against her, is this, that the surrender was not, *of itself,* and without reference to the title of *Taylor,* a disseisin or ouster sufficient to set the statute in motion. There is no *fact* found by the special verdict amounting to an ouster, unless it be, what is termed in the case the attornment of the tenants, in acknowledging to hold, or accepting leases, under *Taylor,* instead of Lady *Stirling.* But unless *Taylor* was lawfully entitled to the possession, this attornment could not, in any way, prejudice the rights of Lady *Stirling,* and it was, of itself, null and void. The statute on this subject declares, that *no attornment of a tenant to a stranger shall be construed in any wise to have changed, altered, or affected the possession of the landlord, except the same be made with the consent of the landlord, or in pursuance of a judgment, or made to a mortgagee,* &c. This brings us to the last and main question in the case, and that is, can *Taylor's* entry be protected under the mortgage from Lord *Stirling* to Mrs. *Waddell?* Every other point of defence having failed, the whole cause turns upon the solution of this interesting question.

The will of Mrs. *Waddell* sets out with a declaration that she disposes of *her whole estate, real and personal,* and, after some specific legacies, she directs her executors to collect all her outstanding debts, and that all the *rest of her estate in Hardenberg's patent, and elsewhere, whatsoever, and wheresoever,* be turned by them into money, and be equally distributed among her five children, share and share alike, " who are to be tenants in common in fee of the realty, until such sale and distribution be made." It is very clear to me, from this will, that Mrs. *Waddell* did not intend to die intestate, as to any part of her estate. She did not intend that her eldest son *William* (and whom she, evidently, in the same will, rebukes for his disobedience) should inherit any part of her estate, whatsoever, as heir at law, in preference or in exclusion of her other children. She meant that the mortgage debt of Lord *Stirling* should go as the rest of her estate went. She probably knew nothing of the distinction between a beneficial interest in the mortgage debt, and a dry, technical, legal estate in the mortgaged premises. If the distinction was known to her, she never intended that her eldest son should avail himself of it. If the mortgage was personal estate, she meant that her executors should take and distribute it; and if it was real estate, capable of enjoyment, and of being devised as such, she meant

IN ERROR.
........
ALBANY,
February 1816.

JACKSON
v.
DE LANCY.

it to go, as part of the *realty*, to her five children equally, as te-nants in common. There is no doubt in my mind that this is the fair and obvious intention of the will; for the language is plain and unambiguous, and there is no provision inconsistent with this intention.

We are, however, here met with a difficulty which is sup-posed to be insuperable, and on which the main stress of the argument on the part of the plaintiff was laid. It is admit-ted that the words of the will are sufficient to pass to the five children all the real estate which Mrs. *Waddell* held in her own right; but it is said to be a settled rule of law, in the construc-tion of wills, that general words, such as *lands, tenements,* and *hereditaments,* the *realty,* or other words particularly appropri-ated to real estate, will not carry an interest in land, which the testator holds as mortgagee or trustee; that unless the will spe-cially refers to such an interest, it will not pass by the usual devise of the real estate; and that though, strictly and techni-cally speaking, the mortgagee has a legal estate in fee in the mortgaged premises, yet that estate must descend, as undevised property, to the heir at law, rather than pass with the rest of the estate by such general words.

If this be the rule of law, whatever we may think of it, we are bound to obey it. On this point I fully agree with the learned counsel for the plaintiff. No man feels more strongly than I do, the duty incumbent on every member of this court to declare the law, truly and strictly, in all our judicial deci-sions. We sit here, not as a branch of the legislature, but as a court of justice, and we must not, in any case, set up the autho-rity of our own " right reason" as paramount to the law which we are sworn to administer. But it is unnecessary to press these reflections. I have satisfied myself, and, perhaps, I may be able to satisfy others, that the rule of law is *not* as was stated on the part of the plaintiff; but the rule is, that the same words in a will which will carry any other estate will carry, also, the legal estate held in trust under a mortgage.

This latter is, upon the whole, the most convenient rule, though I admit it cannot be very material, as it respects the in-terest of parties, which way the rule is settled; for, whoever takes a trust estate, whether it be the heir, by descent, or the devisee, by will, he must take it as trustee merely, and is equally responsible in the one capacity as the other. But, if the public interest is not much concerned in settling the rule, there is the

IN ERROR.
........
ALBANY,
February 1816.

JACKSON
v.
DE LANCY.

less reason for refusing to construe the words of a will according to their ordinary meaning. Lord *Rosslyn* has said (5 *Vesey,* 339., that it would be more convenient that trust estates should pass by general words, because it is more convenient for those who are concerned in the trust to find the devisee than the heir; and if this be the case in *England,* the convenience is vastly increased with us; because, in *England* the eldest male is, alone, the heir at law, but with us all the children, male and female, inherit together. And if the beneficial interest in the mortgage debt is given to the devisee, the inducement is still stronger to give him the legal estate; for why should the legal and the beneficial interest in the mortgage premises be, unnecessarily, separated? What possible use would there be in allowing the legal estate in the mortgage to descend in this case to *William Waddell,* the heir at law, when he would, as heir, be only a mere naked trustee for those who were entitled to the beneficial interest in the mortgage debt under the will? It would be far better, on the score of convenience and simplicity, to let the legal and equitable interests under the mortgage go together, as they in fact existed together in the person of Mrs. *Waddell* at the time of her death.

The rule, as now settled, is this, that trust estates will pass by the usual general words in a will passing other estates, unless it is to be collected from the expressions in the will, or the purposes and objects of the testator, that it was his intention they should not pass. This was the rule as declared by Lord Ch. *Eldon,* in *Braybroke* v. *Inskip,* (8 *Vesey,* 407.,) after much examination and reflection. In that case *A.* held land in trust, and by will devised all his real and personal estates whatsoever, &c., to his wife, and it was held by the master of the rolls, and afterwards by the Lord Chancellor, that the legal estate in the trustee passed by this general devise The Lord Chancellor said this was a question of intention of the testator, and the weight of convenience was in favour of the rule. The will was large enough, and there were no expressions in it authorizing a narrower construction, and no purpose inconsistent with an intention to pass the trust estate to the devisee. He said there was no case establishing a different rule; and that if there was any such case, he would abide by it. The rule, according to the old cases, unquestionably was, that a trust estate would pass by general words.

IN ERROR.
.......
ALBANY,
February, 1816.

JACKSON
v.
DE LANCY.

This is the final decision in the *English* courts, on the very point which has been raised and discussed in this place ; and after the decided opinion of so laborious and able a lawyer as Lord *Eldon*, we may well doubt whether the learned counsel for the plaintiffs have not been mistaken in their apprehension of the rule of law. It is admitted, on all hands, that a mortgagee holds the mortgaged lands in trust ; and when it is said that a devise of real property will, ordinarily, pass a trust estate, all the cases consider it as applying as well to a mortgagee as to any other trustee ; and, indeed, it applies the stronger to that case when we find that the devise does actually pass the beneficial interest in the mortgage debt.

The case of *Roe, ex dem. Reade,* v. *Reade,* (8 *Term. Rep.* 118.,) in the K. B., declares the same rule. *A.* having estates of his own, and having another estate which he held as a mere naked trustee, without any interest, devised all his estate whatsoever, and wheresoever, *after payment of debts and legacies.* The question was here between the heir and devisee, which of them took the trust estate; and the K. B. put it entirely on the ground of intention. The general words seem, both by the counsel and the court, to have been admitted to be sufficient to pass the trust estate ; but as the testator had here charged all his lands devised with the payment of debts and legacies, it was decisive evidence that he did not intend to pass the trust estate by that will, because he had no right to charge it with such payments; and as the intention in this case was manifest, for that reason, and that reason only, the trust estate was held not to pass. So, in another case, (*Ex parte Morgan,* 10 *Vesey,* 101.,) Lord *Eldon* held, that where a mortgagee had devised all his real estate, charged with an annuity, it could not be considered as his intention to pass the mortgage estate, because that estate was not his own. He only held it in trust for a special purpose, and he had no right to charge it with an annuity.

Here, then, we have the decisions of the courts of law and equity in *England*, uniting in the rule as I have stated it; and if we go back, as Lord *Eldon* did, to the old cases prior to the revolution, and which are to be received strictly as authority, we shall find them containing and expounding the same doctrine.

I begin with the case of *Winn* v. *Littleton,* (1 *Vernon,* 3. 2 *Ch. Cas.* 51.,) decided as early as 1681, by Lord *Nottingham,* whom Sir *Wm. Blackstone* always mentions with the reverence

IN ERROR.
......
ALBANY,
February, 1816.

JACKSON
v.
DE LANCY.

due to the father of the *English* system of equity jurisprudence. The testator, in that case, was seised of divers lands in his own right, and divers lands as mortgagee, and he devised all those lands he held in his own right by specific designation, and adds, *or elsewhere within the kingdom of Wales*, and he charged his lands devised with a rent charge for life. The question was, whether the lands held in mortgage passed by the will, and it was held that they did not, because it appeared not to be the testator's intention, as he made special mention of his own lands, and not of the other. But another and a stronger reason was assigned by the court; and this was, that the testator had charged the lands that passed by the devise with a rent charge for life, and he could not be thought so improvident as to grant a rent for so great an estate, and of so long a continuance as for life, out of mortgage lands which were every day redeemable.

This decision places the question, whether a trust estate will pass by general words, on the same ground that it was placed by Lord *Eldon*, 120 years afterwards. It is a question altogether of intention, and to be gathered from the scope and design of the whole will. If the intention be not otherwise pretty clearly expressed, and it be not inconsistent with the nature of the other provisions in the will, the understanding is that the trust estate will pass.

The case of *Marlow* v. *Smith* was the next decision on the point. (2 *P. Wms.* 198.). It was decided in the time of Lord *Macclesfield*, in 1723. The testator devised part of his estate to *A.* and *all the rest and residue of his estate* to *B.* It was held by the master of the rolls that the land which he held as a bare trustee, passed by these latter words, for the legal estate was *his* estate in the eye of the law; and there was, it was said, no inconvenience in this construction, for the devisee would be equally a trustee. So, again, in the modern case *Ex parte Sergison*, (4 *Vesey*, 147.) the master of the rolls, afterwards Lord *Alvanly*, and Lord *Rosslyn*, were both inclined to the opinion, that a mortgage estate would pass by general words in a will, such as *all the rest, residue, and remainder of my estate, real and personal, of what nature or kind soever.*

In addition to this weight of authority, I might add the opinions of Mr. *Butler*, in one of his notes to *Coke on Littleton*, (*Co. Litt.* 203. *b.* n. 96.,) and of Mr. *Sanders*, in his note to

JACKSON
v
DE LANCY.

1 *Atk.* 605. and both these writers bestow some pains on the question, and each cites a case, to the same effect, and not elsewhere reported.

Then, what are the authorities on which the counsel for the plaintiff have relied? We may well ask this question after the cases which have been mentioned, and after Lord *Eldon* has said that he knew of *no case* against the general rule which has been stated. They rely, in the first place, on a loose observation in the case of *Strode* v. *Russel*, in 1708, (2 *Vern.* 621.) in which it is stated to have been agreed by the chancellor, assisted by the master of the rolls and two judges, that mortgages in fee, though forfeited when the will was made, did not pass by the general words. There is nothing in the case to the point but this single observation, and Mr. *Sanders*, in the note to which I have alluded, says that this case affords no argument on either side, as the decree takes no notice of any mortgages, except those whereof the testator had, after the making of the will, purchased the equity. The next authority, more confidently relied on, is an observation of Lord *Hardwicke*, in *Casborne* v. *Scarfe*, (1 *Atk.* 605.) in which he says, that by a devise of *all lands, tenements, and hereditaments,* a mortgage in fee will not pass, unless the equity of redemption be foreclosed. This does not appear to have been the point in the cause, and it is rather to be considered as an extrajudicial *dictum;* and Lord *Eldon* declared (8 *Vesey,* 436, 437.) that he did not believe Lord *H.* ever said so. And when this *dictum* was cited in another case, (4 *Vesey,* 149.,) the then Solicitor General, Sir *John Mitford,* told the court that Lord *Northington* and Lord *Thurlow* had overruled that opinion.

Another case relied on by the plaintiff's counsel, is that of the *Duke of Leeds* v. *Munday,* (3 *Vesey,* 348.,) in which the master of the rolls (Lord *Alvanley*) is made to concur in opinion with Lord *Hardwicke.* We find, however, that he afterwards declared (5 *Vesey,* 341. *note,*) that the opinion imputed to him in this case was not correct; and that he did not mean to decide the question, but made a conditional decree, on account of his doubts. The last case mentioned is that of the *Attorney General* v *Buller,* (5 *Vesey,* 339.) in which Lord *Rosslyn* seems to intimate that a trust estate will not pass by general words in a will, and yet, strange as it may appear, he afterwards said. (8 *Vesey,* 437.,) that he was overborne in that case by some observations

of the attorney-general, and that his opinion was rather with Lord *Eldon.*

IN ERROR.
........
ALBANY,
February, 1816.
JACKSON
v.
DE LANCY.

On reading these latter cases, we are almost involuntarily led to pause, and wonder at the extraordinary and very unaccountable perplexity, doubt, and alternation of opinion, which they discover on this point. The learned men referred to in these cases, do not appear to me, with all proper humility be it spoken, to have examined this question with the diligence or the talent worthy of the eminent reputation they bear. If, indeed, they did, the reports have done them great injustice. Lord *Eldon* had studied the question with profound attention, and he showed it to be perfectly clear and settled; but in the other modern chancery cases on this point, we find nothing but what tends to expose the inefficacy of legal learning, and the weakness of human reason.

I have thus finished a review of all the material cases on the subject; and if the court have had the patience to attend to this dry detail, I presume they must be satisfied that there is no technical rule of law to withstand the intention of the will. And when Mrs. *Waddell* directed, that *all the rest of her estate in Hardenbergh's patent, and elsewhere, whatsoever, and wheresoever, should be turned into money, and distributed among her five children, who should be tenants in common, in fee of the realty, until such sale and distribution be made,* she intended that her legal and beneficial interest in the mortgage debt, and premises, should pass with the rest of her estate. It follows, then, of course, that *John Taylor* was authorized to enter under the mortgage, in right of his wife, and of Mrs. *Miller,* two of the daughters of *Anne Waddell,* and that the notion of an illegal and fraudulent attornment to *Taylor* is totally without foundation. We may consider his possession as the possession of all the claimants under the will.

Even if the technical legal estate in the mortgage had descended to the heir, he would have been but a mere trustee for all the children to whom the beneficial interest was devised, and they would have been entitled to use his name to recover the money, or to foreclose the mortgage, or to gain possession. This was so declared by Sir *John Strange,* in the case of *Attorney General* v. *Meyrick,* (2 *Ves.* 44.) And though it is not now necessary to give any opinion on that point, I should incline to think, that even in that case, the children of Mrs. *Waddell*

could protect themselves in the entry and possession, under the mortgage.

But I need not pursue the subject further. I have examined the case on every point, and am of opinion that the judgment of the supreme court ought to be affirmed.

*April 1st.*

This being the unanimous opinion of the court, it was thereupon. ORDERED and ADJUDGED, that the judgment given in this cause be affirmed, and the record remitted, &c. And that the plaintiffs in error pay to the defendants in error their costs, to be taxed, &c.

*Per totam Curiam.* Judgment affirmed.

*April 2d.*

A motion was made, on the part of the plaintiffs in error, for double costs.

*Costs.*

THE CHANCELLOR. The 14th section of the *act concerning costs* applies only where the writ of error is sued out by the defendant below. That section is a transcript of the statute of 13 *Car.* II. and such has always been the construction of it. (*Hullock on Costs*, 280, 281 ) The decision of the supreme court, in *Peters & Gedney* v. *Henry*, (6 *Johns. Rep.* 278.,) is to this point. The 14th section gives double costs, for *delay of execution*, and that is understood to apply only when the plaintiff below recovers. The defendants are entitled to *single costs* only, under the 12th section of the act.

*Per tot. Cur.* Single costs only awarded.