## WINKLEY v. KAIME.

A testator devised " thirty-six acres, more or less, in lot 37, in 2d division in Barnstead," and there was no such lot as 37 in the 2d division in that town; but there was lot No 97 in that division, a *part* of which the testator died possessed of.—*Held*, that there was a latent ambiguity in the devise which might be explained by parol evidence.

Where there is a false description in a will, either of the devisee or of the property devised, and there is a sufficient description of the land devised, or of the person of the devisee, intended by the testator, independent of the erroneous description, the will will take effect.

Where a testator gave " thirty-six acres, more or less, in lot 37, in 2d division in Barnstead, being same I purchased of John Peavey," and it appeared that there was no such lot as 37 in the 2d division—*held*, that the words, " in lot 37," might be rejected as a false description, and that the will might take effect upon the land.

Twenty years' possession of land, under a deed from an administrator, raises a conclusive presumption that all the legal formalities of the sale were observed.

WRIT OF ENTRY. The premises claimed are a part of lot No. 97 in the 2d division in Barnstead, containing about forty acres, more or less, of wild land which has never been improved or enclosed by fences.

The plaintiff claimed title by devise from Benjamin Winkley, of " thirty-six acres, more or less, in lot 37, in second division in Barnstead, being same I purchased of John Peavey," and in proof of title in said Winkley, offered:

1. Deed from John Peavey to said Winkley, dated March 25, 1839, of thirty-six acres, more or less, in lot 97, in 2d division, bounded and described in the plaintiff's declaration.

2. Deed from Carr and Rowe to said Peavey, dated September 20, 1834, of a certain parcel of land, containing forty-three acres, more or less, being that part of lot 97 which was set off to Moses Canney on execution against Alpheus Chesley, except ten acres sold by Canney to John Sinclair; " being the lot conveyed to us by G. W. F. Mellen by his deed of assignment, October 13, 1832."

3. Deed of assignment from G. W. F. Mellen to said Carr and Rowe, dated October 13, 1832, of a lot of land in Barn-

stead, containing forty-three acres, more or less, being part of lot 97.

4. Deed of the premises from M. W. Mellen to said G. W. F. Mellen, dated April 10, 1826.

5. Deed from Hale and Green to said M. W. Mellen, dated November 28, 1815, of land described in the deed herein next mentioned.

6. Deed from said M. W. Mellen as administratrix of H. Mellen, deceased, to said Hale and Green, dated November 28, 1815, of all the intestate's right in fifty acres of land, in Barnstead, with six days in the Sinclair mill, so called, near said land. The plaintiff offered evidence showing where said mill was, and that it was near the premises claimed in this suit, being within fifty or seventy-five rods of them. He also offered evidence showing a proper appointment of said M. W. Mellen as administratrix, and proper license to her to sell real estate, but none to show any petition for said license, notice to the heirs, or other proceedings in relation to the sale, and no reason was shown for not producing them.

7. Mortgage of the premises from Moses Canney to said H. Mellen, dated May 21, 1803, to secure a note for $100. The plaintiff offered no evidence of any foreclosure of said mortgage, or of any transfer of the note secured thereby to subsequent purchasers, and said note was not produced or in any way accounted for.

8. Levy of an execution, Moses Canney v. Alpheus Chesley, on the premises. The execution was returnable on the 3d Tuesday of June, 1790, and on it was a return by the officer of a delivery of seizin to the creditor, February 27, 1791. The plaintiff offered no evidence of any title to, or possession of, the premises by said Chesley.

The plaintiff also offered, in connection with the foregoing conveyances, evidence showing that said Benjamin Winkley during all the time he held a deed of the premises, from 1839 to 1850, cut his yearly stock of wood on them, and sold hoop-poles growing thereon. Also that said Peavey, while he held deed of the same,

cut hoop-poles thereon, and some wood and perhaps timber. The plaintiff also offered a witness who testified that in 1826 he had a talk with G. W. F. Mellen about purchasing the premises of him, and Mellen directed him to go on and examine the premises, and he did so, and the bounds were shown to him, but he did not purchase. The witness further testified that in 1829 he was on the premises with said Mellen, when the lines were run out and spotted, and that in 1829 or 1830 he bought of Mellen hoop-poles growing on the premises.

The foregoing conveyances and evidences of possession were all the evidence offered by the plaintiff, except as hereinafter stated.

The plaintiff proposed to offer evidence that these premises were taxed to said Mellen, and said taxes were paid by him, as evidence of claim to and possession of the same by him, but the court rejected the evidence.

The defendant offered in evidence :

1. Deed from Thomas and Hannah Johnson to him, dated November 14, 1851, of certain lands in Barnstead, being nineteen acres out of lot 97, being same deeded by Benjamin Winkley as collector of taxes to J. G. Kaime, dated May 1, 1801, in common, and of lot formerly owned by Hale and others.

2. Deed from E. and Hannah Low to Thomas Johnson, dated October 6, 1818, of all said Hannah's right, &c., in the estate of her father, J. G. Kaime, deceased.

3. Deed from Benjamin Winkley, aforesaid, as collector of taxes on sale for nonpayment of the same, to said J. G. Kaime, dated May 1, 1805, of nineteen acres of land out of lot 97, in common and undivided, being same lot that was formerly owned by Hale and others. In said deed was a covenant by said Winkley to warrant and defend said premises to said grantee, his heirs and assigns, against the lawful claims or demands of any person or persons whomsoever, saving the right to redeem according to law. No evidence was offered in relation to the assessment of taxes, or to any of the other proceedings in the sale of said premises for nonpayment thereof, and no reason was shown for not offering such.

The defendant also offered, in connection with the foregoing conveyances, a witness, who testified that in about 1828 he assisted said Thomas Johnson about two days cutting logs on these premises, and the lines were then pointed out to Johnson by an owner of adjoining land ; that the timber cut was hauled away by Johnson, and he, the witness, had some of the logs in pay for his work in helping cut them, but he did not recollect of said Johnson then saying anything about who was the owner of the premises. Another witness testified that in 1830 he went on the premises with said Johnson, and by his direction, and hauled a load of hemlock bark, taken from trees cut and then lying on the premises, to Johnson's house ; and that again, in 1837 or 1838, he went on the premises with said Johnson, and cut a few white oak butts for axe-handles, &c., and that Johnson then said he understood Peavey claimed the land, but he was not afraid to cut, and if Peavey wished to bring an action he might do so. And another witness testified that he was the son of J. G. Kaime aforesaid, who died in 1805, and that in the fall after the death of his father, he, the witness, cut hoop-poles on the premises.

It appeared that said J. G. Kaime left eight children, one of whom afterwards died unmarried and without issue, and the others are still living, of whom are Benjamin Kaime and Hannah Low, hereinbefore mentioned, and this defendant, and Hannah Johnson aforesaid, who was the widow of said J. G. Kaime.

No evidence was offered by either party to show what lands were intended and conveyed by the several deeds offered by them respectively, and whose descriptions are herein before particularly mentioned, except as is in this case expressly stated. A witness for the plaintiff testified that he never knew of John Peavey occupying any such lot as 37 in 2d division, or that there was any such lot. And there was no evidence that there was any such. The plaintiff, in order to show what lands were conveyed by the deeds offered by the defendant, Winkley to J. G. Kaime, and T. and H. Johnson to the defendant, offered in evidence the levies on executions, Hale and other, and Waldron v. Chesley, and delivery of seizin to the creditors in 1790 of parts

of lot 97 in 2d division, not including these premises.   And the plaintiff for the same purpose offered a witness, who testified that in about 1820 his father, now deceased, was in the occupation of a part of lot 97, not including these premises, and when so in possession stated to the witness that he was in possession under Hale and others.   To this last the defendant objected as incompetent, but the same was admitted.

Whereupon it was agreed by the parties that the questions arising in this case be transferred to the Superior Court of Judicature for determination, said court to order such judgment for the plaintiff or defendant as on the foregoing case shall be proper.

*Bellows*, for the plaintiff.

The entry in 1826 under G. W. F. Mellen by the person proposing to buy, and the entries and marking out and spotting lines by Mellen, in 1829 and 1830, under color of title from Martha W. Mellen, and the possession of Peavey and Benjamin Winkley from 1834 to 1850, are sufficient to entitle the demandant to maintain this action against the defendant, without undertaking to show a transfer of the title obtained by the extent of the execution of Moses Canney.   The entries by Thomas Johnson avail nothing.   The earliest was in 1828, which was two years later than the entry under Mellen ; and again, those entries were not accompanied with any claim of title.   The deed from E. and Hannah Low to Thomas Johnson does not describe this land, but merely releases her interest in the estate of her father, J. G. Kaime ; and her father is not shown to have had any title or color of title.   *Leverett* v. *Walker*, Grafton Co.

The entry testified to by a son of J. G. Kaime, to cut hooppoles in the fall of 1805, after the death of his father, avails the defendant nothing.   He does not claim under the witness, nor was the entry accompanied with any claim of title, and for fifty years none seems to have been asserted.

The deed from Benjamin Winkley, collector, of May 1, 1805, to J. G. Kaime, conveyed nothing, no authority for such sale having been shown.   Besides, it is void for uncertainty.   *Haven* v.

*Cram*, 1 N. H. 93. Besides, the reference in the deed shows an attempt to convey nineteen acres out of the other part of the lot, set off on execution, Hale & al. *v.* Chesley. It did not appear that J. G. Kaime ever entered upon the lot in question. Nothing therefore ever passed to his heirs, not even color of title. See *Leverett* v. *Walker.* At the most, according to the defendant's own claim, he has only two sevenths of nineteen acres to be held in common, either out of the easterly side of the lot or the whole.

The plaintiff is not estopped by the covenants in the deed of his ancestor. *Stephenson, admr.,* v. *Weeks,* 2 Foster 257.

As to the covenants of seizen, &c., they did not purport to bind the heirs, were broken as soon as made, and are barred by the statute of limitations.

*Leavitt* and *Bell,* for the defendant.

EASTMAN, J. The demandant declares for forty acres of land, more or less, of lot No. 97, in the 2d division in Barnstead. The case was turned into an agreed one at the trial, and we take the evidence as finding the facts.

The first step in the demandant's title is a devise from Benjamin Winkley to the demandant, of " thirty-six acres, more or less, in lot 37 in the 2d division in Barnstead, being same I purchased of John Peavey."

It is apparent that here is a radical difference between the description of the premises demanded and those contained in the devise ; the land demanded being a part of lot No. 97, and that bequeathed being a part of lot No. 37.

The plaintiff contends that there is a latent ambiguity in the devise, and that the testator intended to bequeath to him the land in lot 97, as set forth in his declaration, and not 37. To prove this, parol evidence was introduced on the trial, tending to show that the lands occupied by Peavey were a part of 97 in the 2d division, and that there is no such lot as 37 in the 2d division in that town.

The first question in the case then is, was this a latent ambiguity, that could be explained by parol evidence ?

Several definitions of a latent ambiguity have been given by different writers, which are doubtless familiar to the profession.

*Sugden*, in his work on vendors, has laid down as concise and perhaps as clear and practical a definition as is to be found in any treatise upon the subject. " A latent ambiguity," he says, " is that which seems certain, and without ambiguity for anything that appears upon the instrument, but there is some collateral matter out of the deed, that breeds the ambiguity." Sugden on Vendors 101.

There is nothing ambiguous in the terms of this devise, but the evidence shows that, as it stands, it cannot take effect, for there is no such lot as No. 37 in the 2d division. The ambiguity is latent; shown so to be by the evidence ; and if that stands well with the words of the will, it will be competent, as showing the meaning and intention of the testator.

Without going into any extended examination of the question of latent ambiguity at the present time, it is sufficient for the present case to say that it appears to come very properly under the rule of *falsa demonstratio non nocet;* the principle being, that if there is a sufficient description of the land devised, or of the person of the devisee intended by the testator, independent of the erroneous description, the will will take effect. *Selwood* v. *Mildmay*, 3 Ves., Jr. 306; *Goodtitle* v. *Southern*, 1 Maule & Selwyn 299; *Day* v. *Trigg*, 1 P. Wms. 286; *Miller* v. *Travers*, 8 Bingham 244 ; *Lush* v. *Douse*, 4 Wendell 313 ; *Worthington* v. *Hylyer*, 4 Mass. 196 ; *Loomis* v. *Jackson*, 19 Johns. 449 ; *Trustees* v. *Peaslee*, 15 N. H. 317 ; *Lathrop* v. *Blake*, 3 Foster 46.

In *Boardman* v. *Reed*, 6 Peters 326, the land was described in a patent as lying in the county of M., and further described by reference to natural monuments ; and it appeared that the land described by the monuments was in the county of H., and not of M., and the court held that that part of the description which related to the county should be rejected, and that the patent was not made void by the mistake.

A learned author in discussing the subject says, that if lands are described by the number or name of the lot or parcel, and also by metes and bounds, and the grantor owns lands answering to the one description, and not to the other, the description of the lands which he owned will be taken to be the true one, and the other rejected as *falsa demonstratio.* 1 Greenl. on Ev., § 301.

By rejecting the words and figures, " in lot 37," in this devise, it will stand thus, " thirty-six acres, more or less, in 2d division in Barnstead, being same I purchased of John Peavey." What the testator purchased of Peavey is shown to be in the 2d division ; is bounded, and answers in all respects to the description in the devise, except the number of the lot. The extrinsic evidence thus manifestly shows what must have been the intention of the testator, and, both upon the doctrine of the authorities and the justice of the case, we think the devise should be made to take effect.

The next link in the demandant's title which appears to require some examination, is the conveyance by the administratrix of H. Mellen to Hale and Green, in November, 1815. A due appointment of the administratrix was shown, and regular license to sell real estate ; but no petition for license, or notice to the heirs, or other proceedings in relation to the sale, were proved.

It is unnecessary to say to what conclusion we might arrive upon this point, were the proceedings and sale of recent date. This sale took place forty years ago ; and after such a lapse of time it will be presumed that the necessary and proper steps were taken to make the sale regular and legal, where possession follows.

Greenleaf says that where an authority is given by law to executors, administrators, guardians, or other officers, to make sales of lands upon being duly licensed by the courts, and they are required to advertise the sales in a particular manner, and to observe other formalities in their proceedings, the lapse of sufficient time (which in most cases is fixed at thirty years) raises a conclusive presumption that all the legal formalities of the sale were observed. 1 Greenl. on Ev., § 20.

And in *Campbell & al.* v. *Wallace*, 12 N. H. 362, it was held that after a partition of real estate by a decree of the court of probate, and an acquiescence and occupation under it for the term of twenty years, the proceedings must be presumed to have been regular, and be held conclusive. The license to sell, as well as the appointment of the administrator, being matters of record, should be proved as was done in this case; but the formalities not required to be of record will be presumed to have been correctly observed, after such a lapse of time, and possession under the title.

Without tracing the title back further than this sale in 1815, we find that in 1826 an entry was made under G. W. F. Mellen, who had the deed of the premises, and that he caused the lines to be run out and spotted in 1829, and cut upon the premises either that year or the following. Peavey, who held the title from 1834 to 1839, cut wood and hoop-poles upon the lot, and Winkley, who held by deed from Peavey from 1839 to the time of his death, in 1850, cut his yearly stock of wood upon the land.

This occupation, with these conveyances, are sufficient to give title to the plaintiff against all who can show no better right to the lot. Has the tenant shown such a right? We think not.

He derives his title from Benjamin Winkley, the plaintiff's devisor, as collector of taxes in 1805. The description of the premises is, nineteen acres of land out of lot 97, in common and undivided, being the same lot that was formerly owned by Hale and others.

We do not propose to consider the question whether or not this deed was void for uncertainty, although the decision in *Haven* v. *Cram*, 1 N. H. 93, would seem to show that it was. In that case it was held that the conveyance of a constable, who sold part of a lot of land for taxes, and described it in his deed as "a certain tract of land, part of lot No. 300, containing 250 acres," was void. And it was said that the deeds of an officer, acting on behalf of the public, and conveying lands not his own, by virtue of a public law, will not be construed to transfer any

thing more than what is particularly expressed. *Jackson* v. *Delaney*, 13 Johns. 537 ; *Jackson* v. *Van Buren*, 13 ditto 525.

This deed might perhaps answer as showing a color of title, had the land ever been located, and possession accompanied the location. But there is no evidence of any location, nor of any possession under this deed, or under those conveyances founded upon it, till 1828—two years after the entry of the demandant under the Mellen deed.

The cutting of a few hoop poles in 1805 by the son of J. G. Kaime, after his death, without any claim of title, cannot be regarded as an entry or possession ; especially as nothing further was done upon the lot till 1828.

We might remark, further, that the reference in the collector's deed to the lands as being occupied by Hale and others, coupled with the evidence showing that Hale and others held in 1790 seizin of a part of lot 97, not including these premises, would seem to show that this deed, if it conveyed any thing, covered land not held by the demandant.

The tenant, then, not showing either title or possession paramount to that of the demandant, must fail, and according to the provisions of the case there must be

*Judgment for the plaintiff.*