## FASSETT a. TALLMADGE.

*Supreme Court, Third District; General Term, Dec.,* 1862.

CREDITOR'S ACTION.—EFFECT OF IMPRISONMENT OF DEBTOR.— APPEALABLE ORDER.—DEFAULT.—LACK OF AFFIDAVIT OF MERITS.—AMENDED COMPLAINT.

An order which affects the substantial right of the party, and which, if permitted to stand, may entirely deprive him of a complete defence to the action, is appealable.

The defendant, in a creditor's action, moved, both for irregularity and as a matter of favor, to have a judgment taken by default upon his answer as sham, set aside, on affidavits showing that he was imprisoned by the creditor under an execution upon the original judgment at the time his default was taken, and that the plaintiff had secretly amended his complaint with regard to a co-defendant, so as to omit material allegations, and that his default was taken from a reliance upon a stay of proceedings in the cause.

*Held,* that an appeal lay from an order denying this motion.

The arrest and detention of a judgment-debtor, under an execution against his person upon the judgment, amounts to a satisfaction of the judgment for the time being.

It is irregular for a plaintiff to amend his complaint as regards one defendant without notice to the other.*

The lack of an affidavit of merits is not a conclusive objection to an application by defendant to excuse his default. He may supply the defect on terms.

---

* In the case of HURLEY *a.* THE SECOND BUILDING ASSOCIATION (*Supreme Court, First District, at Circuit, April,* 1860), it was *Held,* that where an amended complaint was made for the purpose of adding new parties, the original defendants, on whom new summons had not been served, could not treat it as a new action, and object the pendency of the former action. It was, also, *Held,* that an amended complaint need not be so designated upon its face ; and that the rule that a dilatory plea, to be good, must be common to all the defendants and pleaded by all, is applicable to answers under the Code.

The action was brought by Bartholomew Hurley against the Second American Building Association. The defendants' demurrer, on the ground of a defect of parties, was sustained, with the usual leave to amend, in general terms. The plaintiff served an amended complaint, not, however, designating it as such (except in the verification), and also issued a new summons, naming the new parties, and had it served on them, but not on the original defendants, the Building Association. The defendants all appeared by the same attorney, and put in separate answers to the new complaint, the Building Association setting up the pendency of a former action for the same cause, against them alone.

The cause coming on for trial :—

*D. P. Barnard,* for the defendants, objected that the proceedings were irregular

*William R. Stafford,* for the plaintiff, insisted that dilatory pleas could not be put in by one defendant, but must be common to all; and that even if the proceedings were irregular, the defendants' remedy was by motion ; and answering, was a waiver.

LEONARD, J. (after reserving the cause for consideration).—There was no second action commenced. The Association have not been twice served with summons. An amended complaint need not be so designated on its face if there be an amendment in fact. The answer of the Association is not sustained by the evidence. The Association may amend their answer instanter, but the trial is not to be delayed. All dilatory pleas to be good, must be common to all the defendants and pleaded by all. (De Forest *a.* Jewett, 1 *Hall,* 137 ; Shannon *a.* Comstock, 21 *Wend..* 457.) And the Code has not changed this rule.

Fassett *a.* Tallmadge.

Appeal from an order of the special term.

In August, 1860, Elias Fassett recovered a judgment in this court against the appellant, Samuel W. Tallmadge, for the sum of $20,586.77. In December of the same year, Fassett commenced the present suit against the appellant and one Andrew Harder, in the nature of a creditor's bill, and sought to set aside a conveyance made by the appellant to Harder, on the ground of fraud. The complaint charged the appellant with fraud in selling certain real estate ; and alleged that Harder fraudulently purchased and held the same. On January 30, 1861, before the service of summons and complaint on appellant, the respondent stipulated with Harder's attorney to strike out all allegations of fraud in the complaint against Harder, and then to take judgment against him. All this was done without notice to the appellant, and without his knowledge or consent, or that of his attorney. He never became aware of it until June, 1861 —six months after.

The complaint thus amended was served on Harder's attorney, February 11, 1861. On the 21st of the same month the original complaint, *unamended*, was served with a summons on the appellant. Five days later, an order to show cause why action should not be stayed, with a stay of proceedings until the further order of the court, was granted the appellant, which order has never been vacated or modified.

The appellant's attorney served an answer in this action on March 13, 1861. On the 26th of that month the appellant was arrested and imprisoned by the sheriff of the city and county of New York, on an execution issued against his person by the respondent's attorney, on the judgment of August, 1860, and has ever since been detained and imprisoned thereon.*

Notice of motion was then given by the respondent's attorney to strike out the answer of the appellant as sham, and for judgment. This was disregarded by the appellant's attorney, under the belief that the stay of proceedings of February 25th was

* That execution was, subsequent to the argument of this appeal, vacated and set aside, on the ground that it was illegally issued. See the opinion of the general term, reported in 14 *Ante*, 192. This appeal was argued in May, 1862, and not decided until December, 1862.

still in force.   The respondent's attorney thereupon obtained an order by default, July 30, 1861, striking out the appellant's answer, and directing judgment for the respondent and the appointment of a receiver.

On October 29, 1861, the respondent applied for a change of receiver, to which the appellant objected, but was overruled and the application was granted.   (Fassett *a*. Tallmadge, 13 *Ante*, 12.)   An order to show cause why the complaint should not be dismissed, and the whole proceedings should not be set aside, was then granted by Mr. Justice Hogeboom, which was vacated on the return-day with costs, by Mr. Justice Peckham, on the ground that it did not specify the irregularities complained of.   The motion was renewed on notice, and, after argument, was denied with costs, and the defendant appealed.

The defendant in his notice of motion asked that the judgment be vacated or set aside; or, if need be, that the defendant might be allowed to file an answer; also, that the order substituting a receiver might be vacated and declared null and void, upon the grounds:

*First*, that by amending the complaint under the stipulation, it was thereby rendered inoperative against either defendant, and contained no cause of action.

*Second*, that the decree or judgment and all subsequent proceedings sought to be set aside, were had while Tallmadge was imprisoned; which was a satisfaction of the judgment and a bar to the action.

*Third*, that the decree and subsequent proceedings were in violation of an order to stay proceedings, and therefore irregular, and a contempt of court.

*Fourth*, that no copy of the amended complaint was served on the defendant, Tallmadge, or his attorney, as by statute required; and that such amendment was without his consent and irregular.

*Fifth*, that it was irregular to move to strike out the answer after the complaint had been amended, and before defendant had an opportunity to put in an answer or demurrer.

The respondent insisted that the order is not appealable.

*Elbridge T. Gerry*, for the appellant.

*Lyman Tremain*, for the respondent.

Fassett *a.* Tallmadge.

By THE COURT.—MILLER, J.—I think the order made at special term involves the merits of the action. It affects a substantial right of the party; and, if permitted to stand, may entirely deprive him of a complete defence to the action. It is clearly appealable. (*Code,* § 349; Cruger *a.* Douglas, 8 *Barb.,* 81; Tracy *a.* N. Y. Steam Faucet Manufacturing Co., 1 *E. D. Smith,* 349.)

It is claimed that the arrest and detention of the defendant Tallmadge, was a satisfaction of the judgment *pro tempore,* and that no further steps could be taken to enforce the original debt for the time being. In Stilwell *a.* Van Epps (1 *Paige,* 615), which was a bill filed by a judgment-creditor to reach equitable assets, it was held, that while the plaintiff has the body of the defendant in execution on *ca. sa.,* his right to proceed against the property of the latter is suspended. Chancellor Walworth says: "The complainants having taken the body of their debtor into execution, could not proceed against his property at law, while he remained in custody." In that case, leave was asked to file a supplemental bill, setting forth that the plaintiff had been discharged from custody under the Non-imprisonment Act; which was denied upon the ground that all the interest of the debtor had been transferred to the assignee. In Jackson *a.* Benedict (13 *Johns.,* 553), it was decided that the lien of a judgment was suspended during the imprisonment of the judgment-debtor upon a *ca. sa.* In Cooper *a.* Bigelow (1 *Cow.,* 56), it was held, that a *ca. sa.* executed is a satisfaction of the debt, except in certain cases provided for by statute. (See, also, Foster *a.* Jackson, *Hobart,* 52, 59; McGuinty *a.* Herrick, 5 *Wend.,* 240; Wakeman *a.* Lyon, 9 *Ib.,* 241; Hone *a.* Hone, *Ambl. Ch.,* 79.) While it is unnecessary, finally, to determine that question upon this motion, yet I am inclined to think that the plaintiff had no right to proceed with the suit while the defendant was under arrest; and that, upon an application to the court for that purpose, the defendant would have been permitted, by supplemental answer, to set up the arrest as a bar to the action. Nor do I see any good reason why he should not now be allowed to avail himself of this defence, unless his neglect has precluded him.

I am also of the opinion that the amendments of the plaintiff's complaint, striking out all the allegations of fraud, as to

Harder, one of the defendants, so far changed the nature of the action, as to render the complaint invalid, as to him, and at least doubtful whether it was not equally invalid, as to the defendant Tallmadge.

By the stipulation, all the allegations charging the defendant Harder with fraud and fraudulent intentions were stricken out of the complaint. An amended complaint was served on Harder's attorney, and a copy of the original complaint *unamended* was served upon the defendant; thus presenting the anomalous spectacle of a case with two different complaints, in regard to one of which, one of the defendants had neither notice or knowledge.

One of these allegations was, that the conveyance sought to be set aside was executed and delivered fraudulently and corruptly, for the purpose of hindering and defrauding the creditors of Tallmadge. It was also alleged that Harder knew at the time of the execution of the conveyance, that Tallmadge was indebted, embarrassed, and insolvent.

It also contained other allegations of fraud against Harder, which constituted the basis and foundation of the action. Stripped of these charges, it is exceedingly questionable whether the gist of the action was not destroyed, and the complaint so far emasculated and deprived of force and validity, as to present no case upon which the judgment of a court could properly be rendered and made effective; in fact, whether with the allegations of fraud stricken out, the complaint on its face did not show that Harder was a *bona-fide* purchaser for value, protected by the statute against existing creditors. (2 *Rev. Stat.*, 134 ; Anderson *a.* Roberts, 18 *Johns.*, 515.) I do not, however, consider the precise effect of this proceeding as entirely controlling and decisive. It is sufficient in my opinion that it might possibly change the whole character of the case, and seriously affect the rights of the party. I think the defendant was entitled, under any circumstances, to be heard upon that question; and the change in the form of the action was so substantial, so vital, and important, that he should have been served with a copy of the amended complaint; or at least have immediate notice of this new and private arrangement, and a full opportunity to present his objections, as he may have been advised was material.

In this respect, and independent of the question as to the effect of the stipulation in striking out the allegations of fraud in the complaint, the proceedings and the judgment, if nothing more, were clearly irregular. No such practice is recognized as allowing a plaintiff on his own motion, and without the knowledge or consent of one of the defendants in the suit, to strike out a portion of the complaint, and thus proceed to a judgment. An action cannot thus be severed and split up into two, proceeding at the same time with each other, without an application to the court for that purpose, or upon notice to the party who has a right to be heard. The record of the judgment in such a case would present two complaints, only one of which had been served on all the defendants. Upon the facts presented, these proceedings cannot be upheld.

In the case of Thomas *a.* Allen (2 *Wend.*, 618), it was expressly held, that a declaration amended in consequence of a demurrer interposed by one of the defendants, was an amendment as to the other. The amendment of the complaint in the case at bar was not in conformity with the provisions of the Code and the practice, being entirely without notice to the defendant Tallmadge, and in violation of his rights. (*Code*, §§ 172, 173; Thomas *a.* Allen, 2 *Wend.*, 618; Akin *a.* Albany Northern R. R. Co., 14 *How. Pr.*, 337; Ward *a.* Dewey, 12 *Ib.*, 193; 1 *Hovenden on Frauds*, 118; Ritchie *a.* Alwyn, 15 *Ves. Jr.*, 82.)

The motion to set aside the proceedings in this case are not founded upon irregularity alone. Although the defendant claims that the proceedings were irregular (and I think I have shown that they were so in some respects), he at the same time asks permission to put in an answer. The motion is based, in part, upon facts showing that he has from circumstances been deprived of an opportunity to present his defence, and to a considerable extent prevented from doing so by his imprisonment upon an execution issued by the plaintiff upon the judgment upon which this action is based. I do not understand that the defendant claims that his imprisonment was an irregularity in the proceedings in this case, and that they should be set aside on account of this alleged irregularity. He does, however, insist, that it was a defence to the action, and that by reason of this very imprisonment he has had no opportunity to present

his defence. He also urges it as a circumstance addressed to the discretion of the court upon the question of laches in allowing the default to be set aside, and in giving him a chance to be heard.

The objection was taken upon the argument that the defendant had not served an affidavit of merits with his motion-papers, and that for that reason he could not ask the court to set aside the proceedings upon the merits. The defendant swears to merits in reference to the original action, in which an appeal has been taken from the judgment, and is still pending. His counsel who appears to have labored under a misapprehension in this respect, asked permission to file and serve an affidavit of merits in the case, and thus supply the deficiency. There are facts disclosed in the papers, which in my opinion, establish that the defendant may have a good defence to the action. It is certainly apparent that the act of the plaintiff has to some extent interfered with, and restrained the defendant since this action was commenced; and it appears to me that this objection should not be regarded as an insuperable obstacle, if it can be supplied without violating any settled legal principle.

To obviate this technical difficulty (and it is purely such), it may be made a condition of opening the default, and allowing the defendant to answer, that he file and serve an affidavit of merits. It would be enforcing a strict and rigid rule to hold that there is no relief whatever in any such case, and that this court has not the legal right to interfere on account of an objection of this character. While in the exercise of its high functions, it should not disregard its settled and established practice, neither should it permit a mere technicality, which can be easily remedied in accordance with its practice, to suffer injustice to be done, and to prevent the exercise of a sound discretion in setting aside a default for good cause.

While the fact that the judgment is large, should induce the exercise of a proper degree of caution in disturbing plaintiff's proceedings, it also furnishes an additional and a very strong reason why a party should not be deprived of his defence. We violate no rule of law by permitting an aggrieved party to be heard; on the contrary, we promote justice by so doing. The plaintiff will be abundantly protected by allowing the judgment

Fassett *a*. Tallmadge.

·to stand as security, and if he finally succeeds, loses nothing. It only remains to be considered whether the appellant is so far chargeable with laches in not applying for relief at an earlier stage in the proceedings, as to prevent any interference on his behalf.

He was imprisoned during most of the time while the proceedings were in progress; and hence, doubtless, to a considerable extent deprived of a full opportunity to assert and protect his rights. Conceding that the questions presented may have the appearance of a legal defence, his imprisonment is a very strong, if not a sufficient reason for his apparent neglect, and should have great weight upon the question of laches, when the act· of the plaintiff has, to some extent, been the cause of it. Since the argument of this appeal, we are informed that the execution issued by the plaintiff upon the judgment has been set aside. What effect the discharge of the defendant might have under the principle laid down in the cases cited, as to the right of the plaintiff to proceed with the suit, while the defendant was imprisoned; or whether if the imprisonment was a defence at the time, a subsequent discharge after a long confinement would discharge a suit already pending, are questions of too grave a character to be determined without argument. If that new aspect of the case could be considered, after an argument and submission at the general term, it does not, in my opinion, lessen the claim of the defendant to the favorable consideration ·of the court, upon the question of his neglect, that he has thus been illegally arrested and detained. In addition, the appellant swears that the amended complaint was not served on him, and he had no notice of the arrangement by the plaintiff with Harder, that he was to abandon the defence of the suit, and to allow ·a decree to be taken, until a very short time before making the motion. He did not know the nature of the answer put in for him; nor that a motion had been made to strike it out as sham ; nor that it had been stricken out by default, and a decree obtained, until quite recently. It also appears that the .appellant's attorney, by an error of judgment, as to the effect ·of the order to stay plaintiff's proceedings, which might very easily occur (when the authorities upon the question, as in that case, were conflicting), and regarding the motion as irregular, ·did not appear and oppose the motion for judgment. Under

these circumstances, I think the appellant shows a sufficient excuse for his laches, and should be permitted to answer the amended complaint. The order of the special term, denying the motion, should therefore be reversed. The appellant must pay costs of opposing motion, and of entering up the judgment, and serve an answer with an affidavit of merits within twenty days after adjustment, neither party to have costs of appeal; and the judgment to stand as security until the final disposition of the case, with leave to apply to the special term for instructions as to receiver, if necessary, in the mean time.

HOGEBOOM, J., concurred.

PECKHAM, J., dissenting.—This is a motion to set aside proceedings for irregularity—not on the merits, as no affidavit of merits is made.

What are the proceedings sought to be set aside? They are: first, an order of this court made at the July special term, 1861, on notice to the defendant and appellant, striking out the answer of the defendant herein as sham. Second, an order of this court made on notice to the defendant on the 29th of October, 1861. The defendant appeared in court and opposed the motion. These are the proceedings sought to be set aside for irregularity.

The grounds of irregularity are: first, that on the 26th of February, 1861, the defendant obtained an order to show cause at and for the then next special term of this court to make a motion, and an order from a justice of this court for a stay of proceedings. He never appeared to make his motion, and, of course, the order to stay died with the expiration of that special term. It could not well be an irregularity then, to treat it thereafter, as both parties did, as if it were dead. Such action,—it is entirely well settled,—would waive its existence, if it were not dead.

The defendant served his answer on the 13th of March, 1861. Plaintiff gave notice of motion in July following to strike out defendant's answer as sham; which defendant's attorney alleges, with some singularity, that he did not oppose, because he supposed that that order staying proceedings, obtained for a special purpose in February preceding, was still alive. Yet, at the

October special term following, when the case was in precisely the same attitude, he did appear and opposed a motion for change of receiver made by the plaintiff. This waived the order, of course, if it had any claim to be alive then.

I think it may be safely said then, that there is no pretence for the existence of that order to stay proceedings, and that that must be entirely laid aside as a ground of irregularity.

The second ground is: that on the 30th January, 1861, the plaintiff's attorney stipulated with Harder's attorney to strike out of the complaint all allegations of fraud, so far as they included the assignee Harder, the co-defendant of the appellant; and then he consented to a judgment against him, which was accordingly entered. The complaint in this case was to set aside the general assignment as fraudulent; and fraud in that assignment in the first complaint is charged against both defendants. The appellant says he did not know of the existence of that stipulation until June, 1861. The entry of the judgment is not pressed as a ground of irregularity. If it be any thing available to this defendant appealing, it is a defence to this action; in no sense an irregularity, but a fact to be pleaded. But it is not a defence. It is not material in any manner whether the assignee was or not guilty of fraud in the assignment, or whether he accepted it with a guilty knowledge. Assuming, however, that they are both guilty, a judgment against one is no bar to a judgment against the other. Assuming that the assignor, the appellant, is alone guilty, the same result follows.

Nor is the stipulation of the parties and the alteration of the complaint, any ground of irregularity. All the allegations of fraud impugning the assignee were struck out of the complaint. So far as the assignee was concerned, What had this defendant to do with that?

The complaint *unamended* was served on him on the 21st of February, 1861, and he served an answer to it on the 13th of March following. Defendant says he did not know of this stipulation until June, 1861. Suppose he did know it, What remedy had he? What would he have done? He had no remedy whatever. The truth was, he (the plaintiff) had made allegations of fraud against the assignee which were wholly unnecessary, and probably untrue, and he and the assignee

finally agree that they are, and strike them out as to the assignee, and thus take judgment against him. This doubtless operates to sever the suit, but it proceeds as before against the appellant. As to him it is wholly immaterial whether these words are in or out of the complaint. As to him the statute makes it void. And if *he* intended to " defeat, delay, or defraud" his creditors, if they were in, they would be utterly disregarded on the trial—no proof thereof could be required. It would be strange if these parties could not agree to waive the allegation of fraud as to the assignee, but must litigate for years an immaterial point. A *bona-fide* purchaser is an entirely different character—mere ignorance of assignor's fraud, or being innocent himself, do not constitute a *bona-fide* purchaser. He must have paid value to be a *bona-fide* purchaser.

The answers then to this objection, are,

*First.* That the judgment severed the suit, and the case proceeds against the appellant as if his co-defendant had never been a party.

*Second.* That this defendant has nothing to do with the stipulation of these parties—neither in fact nor in law ; so long as his rights are not affected thereby.

*Third.* The complaint as served is the original, unaltered complaint. There is no pretence that the stipulation has been violated thereby, even if this defendant had any right to refer to a stipulation he never made, to which he is no party, and which he cannot take advantage of. It has no analogy to a payment by a joint-debtor, or to the release under seal of a joint-debtor.

*Fourth.* If it were available to this defendant, it could be only as a defence, like a release or payment pending suit, and should be pleaded. It affords not the slightest basis for an allegation of irregularity.

The last ground of irregularity is, that defendant was imprisoned, and so continued from 26th March, 1861, to this time; and that while imprisoned, the plaintiff could not proceed against his property. My brother, Miller, has cited many authorities touching this point. But do any of them pretend that such proceeding is an irregularity? Not one. If any thing, this was a defence to the action, and in a proper case might be pleaded, as in other cases of payment, satisfaction,

release, &c. So say the authorities, and so in fact says my brother Miller. (Wakeman *a.* Lyon, 9 *Wend.*, 241.) But it can scarcely be called an irregularity to commence a suit when you have no cause of action, or one to which the defendant may have a good defence.

Imprisonment can be a defence, only so long as it continues. It appears that such defence did not exist at the commencement of this suit, that the imprisonment was illegal and unauthorized when it occurred, and the defendant has been discharged from his arrest, as appears by a copy of the order sent to the court since the argument, and by the report of the case in 14 *Abbotts' Pr.*, 192.

It is clear, however, that the mere fact of an imprisonment after suit commenced, does not make irregular any further proceeding therein. If the defendant never pleaded it, like most other defences in such case, it will not aid defendant. Here there was no defence when the suit was commenced. There is none when it is sought to be interposed. The fact of the discharge from imprisonment is not legitimately before us, and it is only referred to, in answer to an unauthorized reference to merits. This motion is founded solely upon alleged irregularities. This court should have as little disposition, as in my judgment it has power, to set aside a judgment arbitrarily, against the settled practice of the court. If the defendant had merits, he should have sworn to them. If there had been irregularities dating along in February or January, 1861, the motion on any such ground should have been long before made, and no excuse in law whatever is made for the delay. The fact of imprisonment on the limits in New York (there is no allegation that the defendant was in close custody—the limits are the legal jail) is no excuse whatever for the delay. Besides, the defendant expressly waived all irregularity by affirmative action in court, after all pretended irregularities had occurred. As to defendant's personal knowledge of the proceedings in the cause, the law never presumes *such* knowledge. But it makes knowledge by the attorney, the client's knowledge. Any other rule would be impracticable.

The proceedings being regular—in fact, being virtually so conceded by the decision of Judge Miller, and there being no affidavit of merits, it follows as a consequence that the order

should be affirmed. Here is a very large judgment, and the party is entitled to hold it, unless good cause is shown for setting it aside. None in my judgment is presented. In such case this court at general term has denied its power to set aside a judgment. This court has no more right than an individual to violate the law by disregarding its own settled practices.

Order reversed upon terms.

## BUTCHERS AND DROVERS' BANK a. JACOBSON.

*New York Superior Court; General Term, April,* 1862.

PLEADING.—COMPLAINT ON PROMISSORY NOTE.—SECTION 162 OF THE CODE.

A complaint which sets forth a copy of a promissory note, and alleges that there is due to the plaintiffs thereon from the defendants a certain sum, for which judgment is demanded, is sufficient under section 162 of the Code. It is not necessary to allege that the defendants made the note, nor to show how they are connected with it.

*So held,* where the note sued upon was signed by a firm.*

Appeal from a judgment on demurrer.

The complaint in this action was in the following form:

"New York Superior Court.—The Butchers and Drovers' Bank of Providence, plaintiffs, *against* Frederick Jacobson, Jonas G. Dudley, and Joseph W. Corlies, survivors of the firm of Joseph W. Corlies & Co., defendants.

"The plaintiffs above-named by this complaint state, that there is due to the plaintiffs from the defendants the sum of two thousand four hundred dollars, with interest thereon from Sep-

---

* This decision overrules Price a. McClave, 6 *Duer,* 544; 5 *Ib.,* 670; and probably Alder a. Bloomingdale, 1 *Ib.,* 601; Lord a. Chesebrough, 4 *Sandf.,* 696; Marshall a. Rockwood, 12 *How. Pr.,* 452; and Bank of Geneva a. Gulick, 8 *Ib.,* 51.